HENDRICKSON v MOGHISSI

Docket No. 84203. Submitted June 26, 1986, at Detroit. Decided March 3, 1987.

> Brenda Hendrickson, after undergoing a lengthy course of infertility care and treatment under the direction of Kamran Moghissi, M.D., and Hutzel Hospital, underwent a dilatation and curettage (D & C) procedure performed by Moghissi. No pregnancy test was given to Hendrickson prior to the D & C procedure. Hendrickson at the time of the D & C was pregnant and the procedure terminated the pregnancy. Brenda Hendrickson and her husband, David Hendrickson, filed a medical malpractice action against Moghissi and Hutzel Hospital in Wayne Circuit Court on October 4, 1982. In May of 1984, defendants for the first time asserted the existence of a medical malpractice arbitration agreement signed by Brenda Hendrickson at the time of her admission to the hospital for the D & C. The court, Roland L. Olzark, J., concluded that the arbitration agreement was binding and that the court therefore was without subject matter jurisdiction to entertain the action. The plaintiffs' complaint was dismissed. Plaintiffs appealed, contesting defendants' right to raise the arbitration agreement so late in the proceedings and challenging the validity of the arbitration agreement, which allegedly had not been accompanied by the information brochure required by statute.

> The Court of Appeals held:

> 1. The trial court properly relied upon habit testimony in reaching its decision that Brenda Hendrickson had been provided the required brochure and that the arbitration agreement therefore was valid and binding. The trial court's findings of fact are not clearly erroneous.

> 2. A medical malpractice arbitration agreement does not deprive the circuit court of subject matter jurisdiction over a malpractice claim. While arbitration is encouraged as one method of dispute resolution and, under the uniform arbitration act, circuit courts are to enforce arbitration agreements,

REFERENCES

Am Jur 2d, Arbitration and Award §§ 21, 36, 51, 91.

Arbitration of medical malpractice claims. 84 ALR3d 375.

the courts still have jurisdiction to hear underlying controversies. An arbitration agreement is in the nature of a release or a statute of limitations and, as such, must be asserted in a timely fashion. The timeliness of defendants' assertion of the arbitration agreement was not reached by the circuit court. The case therefore must be remanded to the trial court for a ruling on whether defendants may assert the arbitration agreement as a bar against plaintiffs' action.

3. On remand the parties are to brief the issue whether MCR 2.116(C)(7) governs a medical malpractice defendant's right to assert arbitration as a ground for dismissal. If so, defendants are required to raise the issue not later than the first responsive pleading.

4. If, on remand, the trial court concludes that common law principles apply in this case, the court should consider the fact that the Malpractice Arbitration Act expressly allows the use of civil discovery methods in the arbitration process. Participation in discovery proceedings therefore is not conduct which would act as a waiver of a party's right to arbitration.

Affirmed in part, reversed in part and remanded.

1. ARBITRATION — MEDICAL MALPRACTICE — COURTS — JURISDICTION.
   The existence of a valid medical malpractice arbitration agreement does not deprive the circuit court of subject matter jurisdiction over a plaintiff's malpractice claims.

2. ARBITRATION — MEDICAL MALPRACTICE — COURTS — JURISDICTION.
   A medical malpractice arbitration agreement is in the nature of a release or a statute of limitations, narrowing a party's legal rights to pursue a particular claim in a particular forum; these rights are enforceable by the courts such that a valid release or the expiration of an applicable limitation period will defeat an otherwise valid claim; the circuit court is not deprived of jurisdiction over such controversies since it is bound to apply and enforce the law as to releases or statute of limitations defenses.

3. ARBITRATION — MEDICAL MALPRACTICE — DEFENSES — TIMELINESS.
   An arbitration agreement defense to a medical malpractice action must be timely asserted.

4. ARBITRATION — WAIVER.
   Arbitration rights may be waived by a party's conduct.

5. ARBITRATION — MEDICAL MALPRACTICE — DISCOVERY.
   The Malpractice Arbitration Act expressly allows the use of civil discovery methods in the arbitration process; thus, participa-

tion in discovery proceedings is not conduct which would act as a waiver of a party's right to arbitration in a medical malpractice controversy (MCL 600.5048; MSA 27A.5048).

*Woll, Crowley, Berman, Olsman & Nolan, P.C.* (by *Jules B. Olsman*), for plaintiffs.

*Schureman, Frakes, Glass & Wulfmeier* (by *Robert A. Obringer*), for Kamran Moghissi.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Daniel G. Wyllie, Kathleen McCree Lewis*, and *William J. Vincent*), for Hutzel Hospital.

Before: M. J. KELLY, P.J., and J. H. GILLIS and J. R. ERNST,* JJ.

M. J. KELLY, P.J. Plaintiffs appeal as of right from an order of accelerated judgment entered March 22, 1985. The trial court concluded that it was without subject matter jurisdiction to entertain this controversy in light of a binding medical malpractice arbitration agreement signed by plaintiff Brenda Hendrickson. We do not agree with the trial court's jurisdictional analysis and we remand for further consideration in light of this opinion.

Plaintiffs filed this action on October 4, 1982, alleging that on August 5, 1981, defendant Moghissi had negligently performed a dilatation and curettage (D & C) procedure while plaintiff Brenda Hendrickson was an out-patient at defendant Hutzel Hospital. Plaintiff Brenda Hendrickson had been treating at the hospital's infertility clinic and had become pregnant. As a result of this surgical procedure, the pregnancy was inadvertently terminated. Plaintiffs allege that the defendants were negligent in failing to administer a pregnancy test

---

* Circuit judge, sitting on the Court of Appeals by assignment.

prior to performing the D & C. Plaintiff David Hendrickson's claims are derivative in nature.

Although plaintiffs' action was filed in October of 1982, defendants did not assert the existence of an arbitration agreement until May of 1984, two months after the Michigan Supreme Court had released its decision in *Morris v Metriyakool,* 418 Mich 423; 344 NW2d 736 (1984), resolving in defendants' favor a conflict in this Court regarding the constitutionality of the Malpractice Arbitration Act. MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.* Defendant hospital filed a motion for accelerated judgment on the basis of an arbitration agreement signed by plaintiff Brenda Hendrickson at the time of her admission to the hospital. Prior to the filing of the motion, both defendants had filed answers, various sets of interrogatories had been filed and some answered, and numerous depositions had been scheduled and noticed. Plaintiffs responded to the motion, which was subsequently joined in by defendant Moghissi, by contesting defendants' right to raise the arbitration agreement so late in the proceedings and by challenging the validity of the arbitration agreement, which, though signed by plaintiff Brenda Hendrickson, had allegedly never been accompanied by the information brochure required under MCL 600.5041(6); MSA 27A.5041(6).

The trial court conducted an evidentiary hearing on February 1, 1985, as to the circumstances surrounding the signing of the agreement. Plaintiff Brenda Hendrickson testified at the hearing that she did not receive the required information brochure. Defendant hospital presented the testimony of employee Cheryl Nicholson, who had signed the admitting form. Nicholson testified that, while she had no independent recollection of Brenda Hendrickson, it was the habit of the receptionist in her

office to provide a patient with a copy of the information brochure along with some forms to be filled out in the reception room. The patient would then be called by an admitting interviewer, who would routinely refer to the brochure when presenting the arbitration agreement for the patient's signature. On the basis of Nicholson's testimony, the trial court concluded as a matter of fact that Brenda Hendrickson had been provided the required information brochure and that the arbitration agreement therefore was valid and binding. Although plaintiffs challenge the trial court's factual finding, we cannot say that the finding is clearly erroneous. *Precopio v Detroit,* 415 Mich 457, 462; 330 NW2d 802 (1982). The trial court properly relied upon habit testimony in support of its conclusion. See *Kunath v Sinai Hospital of Detroit,* 149 Mich App 32; 385 NW2d 715 (1986).

Upon finding as a matter of fact the existence of a valid arbitration agreement, the trial court went on to conclude as a matter of law that the agreement deprived the circuit court of subject matter jurisdiction and that defendants could therefore raise the issue of binding arbitration at any time. Plaintiffs also challenge this conclusion of law and we are thus presented with the significant issue of whether a medical malpractice arbitration agreement deprives the circuit court of subject matter jurisdiction over plaintiffs' malpractice claims.

Although we find no Michigan cases directly relating to medical malpractice arbitration agreements, a detailed blueprint for analyzing the jurisdictional effects of arbitration agreements has been developed in the context of automobile insurance policies. In *DAIIE v Maurizio,* 129 Mich App 166; 341 NW2d 262 (1983), lv den 419 Mich 877 (1984), the plaintiff insurer sought a declaratory ruling as to the "stacking" of insurance coverage.

The trial court ruled in favor of the plaintiff and enjoined the defendant from proceeding with arbitration. Nearly three years later, the defendant filed a motion to vacate the judgment and injunction as void for lack of subject matter jurisdiction. The trial court granted the defendant's motion. The sole issue on appeal was whether a statutory arbitration agreement deprives the circuit court of subject matter jurisdiction over an arbitrable controversy, thus allowing a party to challenge a judicial decision as void, undeterred by any time constraints.

In rejecting the defendant's position in *DAIIE v Maurizio,* regarding lack of subject matter jurisdiction, this Court first observed that the Michigan Constitution vests the circuit court with broad original jurisdiction over all matters, particularly civil, so long as jurisdiction is not expressly prohibited by law. Const 1963, art 6, § 13. 129 Mich App 172. Subject matter jurisdiction in particular is defined as the court's ability " 'to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending.' " 129 Mich App 172, citing *Joy v Two-Bit Corp,* 287 Mich 244, 253; 183 NW 45 (1938). Circuit court jurisdiction over a particular subject matter is denied only by constitution or statute. MCL 600.605; MSA 27A.605. In construing such statutes or constitutional provisions, retention of jurisdiction is presumed and any intent to divest the circuit court of jurisdiction must be clearly and unambiguously stated. 129 Mich App 174, citing *Leo v Atlas Industries, Inc,* 370 Mich 400, 402; 121 NW2d 926 (1963), and *Crane v Reeder,* 28 Mich 527, 532-533 (1874).

Application of the above analysis to the instant case persuades us that the circuit court is not

deprived of subject matter jurisdiction over medical malpractice controversies governed by arbitration agreements. Medical malpractice claims constitute traditional civil actions for money damages and clearly fall within the circuit court's original subject matter jurisdiction. Neither party disputes this proposition. Defendants contend, however, that § 5044(2) of the Malpractice Arbitration Act, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.,* and the uniform arbitration act, MCL 600.5001 *et seq.;* MSA 27A.5001 *et seq.,* expressly deprive the circuit court of jurisdiction to hear medical malpractice claims where the complaining party has signed a valid and binding arbitration agreement. We disagree.

Section 5044(2) of the Malpractice Arbitration Act provides:

> An arbitration under this chapter shall be heard by a panel of 3 arbitrators. One shall be an attorney who shall be the chairperson and shall have jurisdiction over prehearing procedures, 1 shall be a physician, preferably but not necessarily from the respondent's medical specialty, and the third shall be a person who is neither a licensee of the health profession involved, a lawyer, nor a representative of a hospital or an insurance company. If a case involves a hospital only, a hospital administrator may be substituted for a physician. If a case involves a health care provider other than a physician, a licensee of the health profession involved shall be substituted for a physician.

This language does not, in our view, clearly and unambiguously deprive the circuit court of jurisdiction over medical malpractice claims if there exists an arbitration agreement. Contrary to defendants' claim, § 5044(2) does not vest *exclusive* jurisdiction in a three-member panel of arbitrators. Moreover, our review of the entire Malprac-

tice Arbitration Act fails to disclose a single sentence which could be construed as such a legislative mandate.

Even when we read the Malpractice Arbitration Act in conjunction with the uniform arbitration act, we are unable to infer any intent on the part of the Legislature to deprive circuit courts of subject matter jurisdiction in these controversies. We recognize that two other panels of this Court have drawn the opposite conclusion. *Bowes v International Pharmakon Laboratories, Inc,* 111 Mich App 410, 414; 314 NW2d 642 (1981), and *Morgan v Kamil,* 144 Mich App 171, 175; 375 NW2d 378 (1985). In neither of these cases, however, was the issue of subject matter jurisdiction directly raised and the reasoning relied upon in finding lack of jurisdiction is terse and unpersuasive. See, also, *Kunath v Sinai Hospital of Detroit, supra,* where a panel of this Court affirmed an order of accelerated judgment based on lack of subject matter jurisdiction due to a medical malpractice arbitration agreement.

We prefer the well-reasoned position set forth in *DAIIE v Maurizio, supra,* as to the effect of the uniform arbitration act on circuit court subject matter jurisdiction. Although §§ 5001 and 5025 of the uniform arbitration act clearly provide that arbitration agreements are to be enforced by the circuit court, the Legislature failed to go so far as to divest the circuit court of jurisdiction to hear an underlying controversy and failed to vest exclusive jurisdiction in a panel of arbitrators. We note that either of these results could easily have been accomplished with direct language. See, for example, § 41 of the Tax Tribunal Act, MCL 205.701 *et seq.;* MSA 7.650(1) *et seq.,* pertaining to the exclusive jurisdiction of the Tax Tribunal, and § 6419 of the Revised Judicature Act, MCL 600.101 *et seq.;*

MSA 27A.101 *et seq.*, pertaining to the exclusive jurisdiction of the Court of Claims. The decision to divest the circuit court of subject matter jursidiction over malpractice controversies would have the significant result of leaving unprotected medical malpractice judgments already entered, but arguably void, where an arbitration agreement exists but was never asserted, such as where the defendants decided as a matter of strategy to litigate, with unfavorable results. We decline to render such a construction of the arbitration statutes without clear and unambiguous direction to do so from the Legislature.

In our view, an arbitration agreement is in the nature of a release or a statute of limitations, narrowing a party's legal rights to pursue a particular claim in a particular forum. These rights are enforceable by the courts such that a valid release or the expiration of an applicable limitations period will defeat an otherwise valid claim. The circuit court is thus bound to apply and enforce the law as to releases or statute of limitations defenses, but is not deprived of subject matter jurisdiction over the controversy. The same principles are true with regard to medical malpractice arbitration agreements.

It is clearly the public policy of this state, as evidenced by both the uniform arbitration act and the Malpractice Arbitration Act and by case law, to encourage arbitration as one method of dispute resolution. See for example *DAIIE v Gavin,* 416 Mich 407; 331 NW2d 418 (1982), and *DAIIE v Sanford,* 141 Mich App 820; 369 NW2d 239 (1985). However, as with release and statute of limitations defenses, the party asserting an arbitration agreement defense to litigation must timely assert that defense. Because the trial court in this case determined that it was without subject matter jurisdic-

tion, the timeliness of defendants' assertion of the arbitration agreement was never decided below. We therefore remand this case to the trial court for a ruling on whether defendants may assert the arbitration agreement as a bar against plaintiffs' action.

Given the briefs presented on appeal, we anticipate that on remand the trial court will be presented with two distinct arguments. Plaintiffs have argued that the bar of an arbitration agreement should be raised in the first responsive pleading or be considered waived, as where a party fails to timely raise the issue of release, payment, infancy or statute of limitations. MCR 2.116(C)(7) and (D)(2). We note that the Michigan Court Rules impose no express time constraints on a party moving for an order to arbitrate under a medical malpractice arbitration agreement. MCR 3.602(B) provides only that, in actions already filed, the party seeking arbitration must proceed "by motion, which shall be heard in the manner and on the notice provided by these rules for motions." We further note that the summary disposition court rule provides for the dismissal of a complaint where the claim is barred because of "other disposition . . . before commencement of the action." MCR 2.116(C)(7). Defendant in *Kunath v Sinai Hospital, supra,* relied in part upon this subrule, but its applicability was never decided. We suggest that the parties on remand brief the issue of whether MCR 2.116(C)(7) governs a medical malpractice defendant's right to assert arbitration as a ground for dismissal. If so, defendants are required to raise the issue not later than the first responsive pleading, pursuant to MCR 2.116(D)(2).

Common law principles also govern a party's right to assert arbitration as a defense. In most jurisdictions, the right to arbitration may be

waived by certain conduct, with each case decided on the basis of its particular facts and circumstances:

> Various forms of participation by a defendant in an action have been considered by the courts in determining whether there has been a waiver of the defendant's right to compel arbitration or to rely on arbitration as a defense to the action. It has been generally held or recognized that by such conduct as defending the action or proceeding with the trial, a defendant waives the right to arbitration of the dispute involved. A waiver of the right to arbitrration on the part of a defendant of a dispute sought to be litigated in court has also been found from particular acts of participation by a defendant, each act being considered independently as constituting a waiver. Thus, a defendant has been held to have waived the right to arbitration of the dispute involved by filing an answer without properly demanding or asserting the right to arbitration, by filing an answer containing a counterclaim against the plaintiff without demanding arbitration or by filing a counterclaim which was considered inconsistent with a previous demand for arbitration, by filing a third-party complaint or cross-claim, or by taking various other steps, including filing a notice of readiness for trial, filing a motion for summary judgment, or utilizing judicial discovery procedures. [Anno: *Defendant's participation in action as waiver of right to arbitration of dispute involved therein,* 98 ALR 3d 767, § 2, pp 771-772.]

The notion that arbitration rights may be waived by a party's conduct has been recognized in Michigan, though not in the context of medical malpractice arbitration agreements. See, for example, *Bielski v Wolverine Ins Co,* 379 Mich 280; 150 NW2d 788 (1967); *Capital Mortgage Corp v Coopers & Lybrand,* 142 Mich App 531; 369 NW2d 922 (1985),

lv den 424 Mich 899 (1986) and *Joba Construction Co, Inc v Monroe Co Drain Comm'rs,* 150 Mich App 173, 178-179; 388 NW2d 251 (1986). In *SCA Services, Inc v General Mill Supply Co,* 129 Mich App 224; 341 NW2d 480 (1983), lv den 419 Mich 895 (1984), this Court concluded that an arbitration agreement governed by the uniform arbitration act had been waived where the defendant participated in discovery proceedings to obtain information which would assist in defending against the action. If, on remand, the trial court concludes that common law principles apply in the case at hand, the court will also want to consider the fact that the Malpractice Arbitration Act expressly allows the use of civil discovery methods in the arbitration process. MCL 600.5048; MSA 27A.5048.

Affirmed in part, reversed in part and remanded. Jurisdiction is not retained.